**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OTTER PRODUCTS, LLC and TREEFROG DEVELOPMENTS, INC., | Case No. 18-cv-04425 |
| Plaintiffs, | |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

## COMPLAINT

Plaintiffs Otter Products, LLC ("OtterBox") and Treefrog Developments, Inc. ("Treefrog") (together, "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

### I.  JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under at least the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Plaintiffs' trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Plaintiffs' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II.   INTRODUCTION

3.    This action has been filed by Plaintiffs to combat online counterfeiters who trade upon Plaintiffs' reputations and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including protective cases for portable electronic devices, using counterfeit versions of Plaintiffs' federally registered trademarks (the "Counterfeit OtterBox and LifeProof Products"). The Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine OtterBox and LifeProof products, while actually selling Counterfeit OtterBox and LifeProof Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit OtterBox and LifeProof Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same

2

transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiffs are forced to file these actions to combat Defendants' counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit OtterBox and LifeProof Products over the Internet. Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

### III. THE PARTIES

**Plaintiffs**

4.      Plaintiffs are properly joined in this one action because Plaintiffs assert rights to relief with respect to or arising out of the same series of transactions, and questions of law and fact common to all Plaintiffs will arise in this action.

5.      Plaintiff Otterbox is a Colorado limited liability company with its principal place of business in Fort Collins, Colorado. Plaintiff Treefrog is an intellectual property holding entity which licenses its intellectual property, including trademark and copyright registrations, to OtterBox.

6.      Founded in 1998, OtterBox is an industry-leading designer, manufacturer, distributor, and seller of high-quality peripherals and accessories for portable electronic devices and computers. OtterBox develops and manufactures protective carrying cases for numerous products, including (i) products manufactured by Apple such as iPhone, iPad, and iPod Touch; (ii) mobile phones manufactured by Samsung, Blackberry, HTC, Nokia, LG, and Motorola; and (iii) tablets and e-readers manufactured by Amazon and others (collectively, "OtterBox

Products").   OtterBox Products have become enormously popular, driven by OtterBox's arduous quality standards and innovative design.   Among the purchasing public, genuine OtterBox Products are instantly recognizable as such.   In the United States and around the world, the OtterBox brand has come to symbolize high quality, and OtterBox Products are among the most recognizable for portable electronic device and computer accessories and peripherals in the world.

7.     OtterBox Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Target, Wal-Mart, Best Buy, and Staples.   OtterBox Products can also be purchased through authorized online retailers, including Amazon and via the official OtterBox.com website which was launched in 1999.

8.     OtterBox incorporates a variety of distinctive marks in the design of its various OtterBox Products.   OtterBox uses its trademarks in connection with the marketing of its OtterBox Products, and is the exclusive owner of more than eighty (80) federally-registered and registration-pending trademarks, including the following marks which are collectively referred to as the "OTTERBOX Trademarks."

| Registration No. | Mark | Date of Registration | International Classes |
|---|---|---|---|
| 3,788,534 | OTTERBOX | May 11, 2010 | For: Protective cases for handheld electronic devices, namely, portable music players, portable video players, cell phones and computers; specially adapted protective carrying cases for computers in class 009. |
| 3,788,535 | OTTER BOX | May 11, 2010 | For: Protective cases for handheld electronic devices, namely, portable music players, portable video players, cell |

4

| | | | phones and computers; specially adapted protective carrying cases for computers in class 009. |
|---|---|---|---|
| 3,623,789 | DEFENDER SERIES | May 19, 2009 | For: Protective cases for interactive, handheld electronic devices, namely, portable music players, portable video players and tablet computers in class 009. |
| 4,616,874 | DEFENDER SERIES | October 7, 2014 | For: Protective covers and cases for personal electronic devices, namely, cell phones in class 009. |
| 3,865,367 | WE'VE GOT TECHNOLOGY COVERED | October 19, 2010 | For: Protective cases for interactive, handheld electronic devices namely, portable music players, portable video players, phones and computers; protective carrying cases specially adapted for portable music players, portable video players, phones and computers in class 009. |
| 3,963,182 | COMMUTER SERIES | May 17, 2011 | For: Protective cases for handheld electronic devices, namely, multifunctional mobile phones, portable music players, portable video players and computers in class 009. |
| 4,372,399 | MADE FOR ADVENTURE | July 23, 2013 | For: Protective covers and cases for handheld electronic devices, namely, cell phones, portable media players, tablets, personal digital assistants, e-book readers, and computers; protective covers and cases for computers in class 009. |
| 4,372,400 | MADE FOR ACTION | July 23, 2013 | For: Protective covers and cases for handheld electronic devices, namely, cell phones, portable media players, tablets, personal |

| | | | |
|---|---|---|---|
| | | | digital assistants, e-book readers, and computers; protective covers and cases for computers in class 009. |
| 3,791,318 |  | May 18, 2010 | For: Protective cases for handheld electronic devices, namely, portable music players, portable video players, cell phones and computers; specially adapted protective carrying cases for computers in class 009. |
| 4,602,221 | **OTTERBOX** | September 9, 2014 | For: Protective covers and cases for handheld electronic devices, namely, cell phones, portable media players, tablets, personal digital assistants, e-book readers, and computers; protective covers and cases for computers in class 009. |

9.     The OTTERBOX Trademarks have been used exclusively and continuously by OtterBox, some since at least as early as 2007, and have never been abandoned.  The above U.S. registrations for the OTTERBOX Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  True and correct copies of the United States Registration Certificates for the above-listed OTTERBOX Trademarks are attached hereto as **Exhibit 1**.  The registrations for the OTTERBOX Trademarks constitute *prima facie* evidence of their validity and of OtterBox's exclusive right to use the OTTERBOX Trademarks pursuant to 15 U.S.C. § 1057(b).

10.     The OTTERBOX Trademarks appear clearly on OtterBox Products, as well as the packaging and advertisements related to such products.  OtterBox Products have long been among the most popular phone and computer accessories in the world and have been extensively promoted and advertised at great expense.  OtterBox Products have also been the subject of

extensive unsolicited publicity resulting from their precision engineering, high-quality, and innovative designs. Because of these and other factors, the OtterBox name and the OTTERBOX Trademarks have become famous throughout the United States.

11. The OTTERBOX Trademarks are distinctive when applied to the OtterBox Products, signifying to the purchaser that the products come from OtterBox and are manufactured to OtterBox's quality standards. Whether OtterBox manufactures the products itself or licenses others to do so, OtterBox has ensured that products bearing its trademarks are manufactured to the highest quality standards. The OTTERBOX Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the OTTERBOX Trademarks is of incalculable and inestimable value to OtterBox.

12. Since at least as early as 1999, OtterBox has operated a website promoting and selling genuine OtterBox Products at OtterBox.com. Sales of OtterBox Products via the OtterBox.com website represent a significant portion of OtterBox's business. The OtterBox.com website features proprietary content, images and designs exclusive to OtterBox.

13. OtterBox has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the OTTERBOX Trademarks. As a result, products bearing the OTTERBOX Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from OtterBox. OtterBox is a multi-million dollar operation, and OtterBox Products have become among the most popular of their kind in the world.

14. Plaintiff Treefrog is an intellectual property holding entity which licenses its intellectual property, including trademark and copyright registrations, to OtterBox.

15.     OtterBox, as a licensee of Treefrog intellectual property, designs, manufactures, distributes, and sells LifeProof branded all-protective cases and related accessories for mobile devices, including iPhones, iPads, iPods, and mobile phones manufactured by Samsung and Motorola, (collectively, the "LifeProof Products"). LifeProof Products deliver the highest level of water proof, dirt proof, snow proof, and shock proof protection (referred to as "the four proofs"), all through a convenient, unobtrusive, and sleek design. The durability of LifeProof Products is evidenced by their ability to meet or exceed rigorous underwater and functional-drop specifications.

16.     LifeProof Products allow consumers to confidently use their mobile devices in conditions normally detrimental to such devices, *e.g.,* underwater, in snow or rain, in dirty environments, or in normal-use environments which nevertheless can occasionally bring damage to such devices, such as when a user accidentally drops their device or spills liquid on their device. LifeProof Products provide their customers an "everyday, everywhere, everything" case to enhance their enjoyment of their mobile devices.

17.     LifeProof Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Target, Wal-Mart, Best Buy, and Staples. LifeProof Products can also be purchased through authorized online retailers, including Amazon and via the official LifeProof.com website which was launched in 2011.

18.     Plaintiffs incorporate a variety of distinctive marks in the design of the various LifeProof Products. Plaintiffs use their trademarks in connection with the marketing of the LifeProof Products, and are the exclusive owners of ten (10) federally-registered and

registration-pending trademarks, including the following marks which are collectively referred to as the "LIFEPROOF Trademarks."

| Registration No. | Mark | Date of Registration | International Classes |
|---|---|---|---|
| 4,057,201 | LIFEPROOF | Nov. 15, 2011 | For: accessories for electronic goods and communications apparatus, namely, protective housings, carrying cases, cases and covers for portable electronic goods and communications apparatus, namely, cell phones, lap tops, tablet computers for ebook, magazine and newspaper reading, and portable media players in class 009. |
| 4,519,288 | LIFEPROOF | April 22, 2014 | For: Protective cases, carrying cases, casings, and covers for portable electronic devices, namely, cell phones, portable media players, electronic tablets, electronic book readers, and laptop computers; cases and holsters specially adapted for holding or carrying mobile electronic devices, namely, mobile phones, electronic tablets, electronic book readers; accessories specifically adapted for mobile electronic devices, namely, belt clips, shoulder straps, or hand straps sold as a unit with the bags, cases, and holsters in class 009. |
| 4,285,129 | LET'S GO! | Feb. 5, 2013 | For: Protective covers specially adapted for personal electronic devices and communications apparatus, namely, cell phones, lap tops, tablet computers for Ebook, magazine and newspaper reading, and |

| | | | |
|---|---|---|---|
| | | | accessories for cell phones, lap tops, and tablet computers for Ebook, magazine and newspaper reading, namely, belt clips, bar mounts and mount adapters, armbands, and headphone adapters in class 009.<br><br>For: On-line retail store services featuring protective covers and accessories for personal electronic devices in class 035. |
| 4,301,438 |  | Mar. 12, 2013 | For: Protective covers specially adapted for personal electronic devices, and accessories for personal electronic devices, namely belt clips, bar mounts and mount adapters, armbands, and headphone adapters in class 009.<br><br>For: On-line retail store services featuring protective covers and accessories for personal electronic devices in class 035. |
| 4,397,480 |  | September 3, 2013 | For: Protective covers specially adapted for personal electronic devices, and accessories for personal electronic devices, namely, belt clips, bar mounts and mount adapters, armbands, and headphone adapters in class 009. |
| 4,520,890 |  | April 29, 2014 | For: Protective cases, carrying cases, casings, and covers for portable electronic devices, namely, cell phones, portable media players, electronic tablets, electronic book readers, and laptop computers; cases and holsters specially adapted for holding or carrying mobile |

| | | | |
|---|---|---|---|
| | | | electronic devices, namely, mobile phones, electronic tablets, electronic book readers; accessories specially adapted for mobile electronic devices, namely, belt clips, shoulder straps, and hand straps in class 009. |
| 4,522,877 |  | April 29, 2014 | For: Protective cases, carrying cases, casings, and covers for portable electronic devices, namely, cell phones, portable media players, electronic tablets, electronic book readers, and laptop computers; cases and holsters specially adapted for holding or carrying mobile electronic devices, namely, mobile phones, electronic tablets, electronic book readers; accessories specifically adapted for mobile electronic devices, namely, belt clips, shoulder straps, or hand straps sold as a unit with the bags, cases, and holsters in class 009. |

19. The LIFEPROOF Trademarks have been used exclusively and continuously by Plaintiffs, some since at least as early as 2011, and have never been abandoned. The above U.S. registrations for the LIFEPROOF Trademarks are valid, subsisting, and in full force and effect. True and correct copies of the United States Registration Certificates for the above-listed LIFEPROOF Trademarks are attached hereto as **Exhibit 2**. The registrations for the LIFEPROOF Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use the LIFEPROOF Trademarks pursuant to 15 U.S.C. § 1057(b).

20. The LIFEPROOF Trademarks appear clearly on LifeProof Products, as well as the packaging and advertisements related to such products. LifeProof Products have long been

among the most popular phone and computer accessories in the world and have been extensively promoted and advertised at great expense. LifeProof Products have also been the subject of extensive unsolicited publicity resulting from their precision engineering, high-quality, and innovative designs. Because of these and other factors, the LifeProof name and the LIFEPROOF Trademarks have become famous throughout the United States.

21. The LIFEPROOF Trademarks have acquired distinctiveness, and when applied to the LifeProof Products, signify to the purchaser that the products come from Plaintiffs and are manufactured to Plaintiffs' quality standards. Whether Plaintiffs manufacture the products themselves or license others to do so, Plaintiffs have ensured that products bearing the LIFEPROOF Trademarks are manufactured to the highest quality standards. The LIFEPROOF Trademarks have achieved tremendous fame and recognition, and, as such, the goodwill associated with the LIFEPROOF Trademarks is of incalculable and inestimable value to Plaintiffs.

22. Plaintiffs are also the exclusive holder of federally-protectable copyrights. For example, Plaintiffs own a U.S. federal copyright registration for its product packaging, which is registered under the following title: "Shipping carton text and graphics for LIFEPROOF LET'S GO! (and water, dirt, snow, shock design)" ("LifeProof's Copyright"). The registration number for LifeProof's Copyright is VA0001860468, which was issued by the U.S. Copyright Office on January 3, 2013. Attached hereto as **Exhibit 3** is a true and correct copy of the U.S. Registration Certificate for LifeProof's Copyright.

23. Since at least as early as 2011, Plaintiffs have operated a website promoting and selling genuine LifeProof Products at LifeProof.com. Sales of LifeProof Products via the

LifeProof.com website represent a significant portion of Plaintiffs' business. The LifeProof.com website features proprietary content, images and designs exclusive to Plaintiffs.

24.     Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the LIFEPROOF Trademarks. As a result, products bearing the LIFEPROOF Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiffs. Plaintiffs are a multi-million dollar operation, and LifeProof Products have become among the most popular of their kind in the world.

25.     Hereinafter, the term "Plaintiffs' Trademarks" shall refer to, collectively, the OTTERBOX Trademarks and the LIFEPROOF Trademarks.

**The Defendants**

26.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit OtterBox and LifeProof Products to consumers within the United States, including the State of Illinois.

27.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the Plaintiffs' Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to

13

conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

28. The success of the OtterBox and LifeProof brands has resulted in their significant counterfeiting. Consequently, Plaintiffs have a worldwide anti-counterfeiting program and regularly investigate suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiffs have identified dozens of fully interactive, commercial marketplace listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit OtterBox and LifeProof Products to consumers in this Judicial District and throughout the United States. Despite Plaintiffs' enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

29. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.

14

Many of the Defendant Internet Stores appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and PayPal. The Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such stores from an authorized retailer. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Plaintiffs have not licensed or authorized Defendants to use any of the Plaintiffs' Trademarks, and none of the Defendants are authorized retailers of genuine OtterBox and LifeProof Products.

30. Many Defendants also deceive unknowing consumers by using Plaintiffs' Trademarks without authorization within the content, text, and/or meta tags of their Internet stores in order to attract various search engines crawling the Internet looking for Internet stores relevant to consumer searches for OtterBox and LifeProof Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine OtterBox and LifeProof Products. Other Defendants only show Plaintiffs' Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for OtterBox and LifeProof Products.

31. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other

unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

32.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, Counterfeit OtterBox and LifeProof Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit OtterBox and LifeProof Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, and the use of the same text and images, including content copied from Plaintiffs' official OtterBox.com and LifeProof.com websites.

33.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

34.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal

16

accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

35. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use Plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit OtterBox and LifeProof Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois and, on information and belief, each Defendant has sold Counterfeit OtterBox and LifeProof Products into the United States, including Illinois.

36. Defendants' unauthorized use of Plaintiffs' Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit OtterBox and LifeProof Products, including the sale of Counterfeit OtterBox and LifeProof Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

37. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 36.

38. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiffs' Trademarks are distinctive marks. Consumers have come to expect

17

the highest quality from OtterBox and LifeProof Products offered, sold or marketed under Plaintiffs' Trademarks.

39.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiffs' Trademarks without Plaintiffs' permission.

40.     OtterBox is the exclusive owner of the OTTERBOX Trademarks, and Treefrog is the exclusive owner of the LIFEPROOF Trademarks. Plaintiffs' United States Registrations for their respective Plaintiffs' Trademarks (Exhibits 1-2) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks, and are willfully infringing and intentionally using counterfeits of Plaintiffs' Trademarks. Defendants' willful, intentional and unauthorized use of Plaintiffs' Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit OtterBox and LifeProof Products among the general public.

41.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

42.     Plaintiffs have no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the goodwill of Plaintiffs' Trademarks.

43.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit OtterBox and LifeProof Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

44.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 43.

45.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit OtterBox and LifeProof Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit OtterBox and LifeProof Products by Plaintiffs.

46.     By using Plaintiffs' Trademarks on the Counterfeit OtterBox and LifeProof Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit OtterBox and LifeProof Products.

47.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit OtterBox and LifeProof Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

48.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the associated goodwill of the OtterBox and LifeProof brands.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

49.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 48.

50.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit OtterBox and LifeProof Products as those of Plaintiffs, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine OtterBox and LifeProof Products, representing that their products have Plaintiffs' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

51.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*

52.     Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputations and associated goodwill.  Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using Plaintiffs' Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine OtterBox or LifeProof Product or is not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine OtterBox or LifeProof Product or any other product produced by Plaintiffs, that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit OtterBox and LifeProof Products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d. further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks, including the Plaintiffs' Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com and Dhgate, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Plaintiffs' Trademarks;

21

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Plaintiffs' Trademarks; and

c.  take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index;

3)  That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4)  In the alternative, that Plaintiffs be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiffs' Trademarks;

5)  That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

6)  Award any and all other relief that this Court deems just and proper.

Dated this 26th day of June 2018.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Mary F. Fetsco
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law
mfetsco@gbc.law

*Counsel for Plaintiffs Otter Products, LLC and Treefrog Developments, Inc.*